UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CECIL W. MORRISON,

        Plaintiff,

v.                                        Case No. 1:04-CV-454
                                          Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

Plaintiff was born on October 15, 1961 and completed the 9th grade (AR 46, 70).[2] Plaintiff stated that he became disabled on February 15, 1994 (AR 64). He had previous employment as a janitor and heavy equipment operator (AR 65). Plaintiff identified his disabling conditions as brittle diabetes with unpredictable blood sugar (AR 64).[3] After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision on July 17, 2003, in which the ALJ found that plaintiff had been under a disability

---

[1] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2] Citations to the administrative record will be referenced as (AR "page #").

[3] "Brittle diabetes" is defined as insulin dependent diabetes "especially that characterized by wide, unpredictable fluctuation of blood glucose values and therefore difficult to control." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 456.

since August 21, 2001 (AR 16-23). In his decision, the ALJ denied plaintiff's claim for DIB because he was insured for benefits only through September 30, 1997 (AR 21-22). However, the ALJ granted his claim for SSI (AR 22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the

inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

The ALJ engaged in the five step sequential evaluation and found that plaintiff was disabled as of August 21, 2001.  First, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 21).  Second, the ALJ found that plaintiff suffered from a severe impairment of diabetes mellitus, type I (AR 19).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19).  The ALJ decided at the fourth step that, prior to August 21, 2001, plaintiff had the residual functional capacity to perform a full range of medium work activity and that he could perform his past relevant work as a janitor (AR 22). However, beginning August 21, 2001, plaintiff could not perform his past relevant work or sustain any competitive work activity on a regular basis (AR 22).  Accordingly, the ALJ concluded that plaintiff has been under a disability as defined in the Social Security Act since August 21, 2001 (AR 22).

## III. ANALYSIS

Plaintiff raises three issues on appeal.

**A. Is the Administrative Law Judge's determination that the onset of disability was August 21, 2001 instead of February 15, 1994 supported by substantial evidence on the whole record and by the regulations?**

The Commissioner must establish plaintiff's onset date of his disability by substantial evidence. *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989); *Willbanks v. Secretary of Health & Human Servs.*, 847 F..3d 301, 303 (6th Cir. 1988). The agency's policy for determining the onset of disability is set forth in SSR 83-20. *See* 1983 WL 31249. Under SSR 83-20:

> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

"Social Security Regulation 83-20 demands that the claimant's onset date be adopted if it is consistent with all the evidence available." *Garland v. Shalala*, No. 94-6647, 1996 WL 99809 at *9 (6th Cir. March 5, 1996). However, the Commissioner is not required to present evidence that would eliminate a possible onset date prior to the determined onset date. *Willbanks*, 847 F.2d at 303.

In *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990), the court set forth the process by which the disability onset date is determined:

> Claimants bear the burden of establishing a disabling condition before the expiration of their insured status. Factors relevant to the determination of the date of disability include the individual's declaration of when her disability began, her work history, and available medical history. The Secretary must use the claimant's

5

>statement as the starting point in determining the onset of nontraumatic disabilities. The claimant's stated onset date is used as the established onset date when it is consistent with available evidence. Furthermore, a claimant's onset date may be rejected only if reasons are articulated and the reasons given are supported by substantial evidence.

*Ivy*, 898 F.2d 1045 at 1048 (Citations omitted).

SSR 83-20 provides extensive instructions on the use of inferences in cases where precise evidence of a disability onset date is not available:

>In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.
>
>If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. . . The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record. . .
>
>The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a

> continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

SSR 83-20.

Here, the ALJ's decision does not contain a "convincing rationale" for choosing August 21, 2001 as the onset date for plaintiff's disability. This date does not appear to correspond to any particular physician's report, hospital admission or other event, and the court cannot trace the ALJ's reasons for adopting an onset date of August 21, 2001.[4] Indeed, the ALJ's decision is internally inconsistent on this issue, as indicated in the following paragraph of his decision:

> No treating or examining physician restricted the claimant's activities in any way until <u>October 2001</u>. Records indicate only a few hospitalizations or emergency room visits relating to diabetes during the past nine years. Thus, the undersigned finds that prior to <u>August 21, 2001</u>, the claimant retained the residual functional capacity to perform a full range of medium work activity. This is consistent with the State agency medical consultant opinions. Moreover, the undersigned concurs with claimant's treating physicians that by <u>August 21, 2001</u>, the claimant's medical condition had deteriorated to the point that he exhibited significant physical functional limitations and he was no longer able to sustain work activity on a full time basis.

(AR 21) (emphasis added).

In reaching his decision, the ALJ also refers to a letter from the Michigan Rehabilitation Services (MRS) which indicates that as of October 2003 plaintiff suffered from brittle or "unstable" diabetes (AR 20, 236). In this letter, a counselor at the MRS stated that plaintiff's condition appeared to be "unstable medically" and recommended that plaintiff contact his medical adviser concerning his ability to work (AR 236). The ALJ also cites a report from David Halsey,

---

[4] It appears to the court that the ALJ may have intended to set the disability onset date as October 21, 2001 rather than August 21, 2001 (AR 20).

M.D., dated November 29, 2001, which states that plaintiff's diabetes had been complicated at that point by neuropathy and that the diabetes was "making it difficult for him to even work" (AR 20, 267). Although the ALJ states that "[n]o treating or examining physician restricted the claimant's activities in any way until October 2001" he proceeded to find a disability onset date of August 21, 2001 (AR 20). In addition, the ALJ refers to a daily activities questionnaire signed by plaintiff's wife on October 18, 2001, which indicated that plaintiff could perform a number of activities, such as mow grass, feed animals, take children to school, take children to the dentist, take children to the doctor, drive daily, cook daily, shop, read, fix minor things and hunt once or twice a year (AR 20, 93-98). The ALJ reports these findings in such a manner as to suggest that plaintiff could perform work related activities at that time (AR 20).

Given this record and the internally inconsistent decision, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate the evidence with respect to the disability onset date of August 21, 2001.

> **B.** **Is the Administrative Law Judge's failure to accord controlling weight to the treating physician's opinions concerning Morrison's limitations supported by substantial evidence on the whole record and the regulations?**

Plaintiff's argument set forth in his brief does not relate to the statement of issue on page 9 of his brief. While the stated issue contends that the ALJ failed to give controlling weight to the treating physicians' opinions, the argument in his brief questions whether the ALJ made a proper RFC determination. Plaintiff's Brief at 17-20. The court will address the arguments as set forth in the brief.

8

Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting notwithstanding functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). The ALJ gives no rationale for his conclusion that prior to August 21, 2001, plaintiff retained the residual functional capacity to perform a full range of medium work (AR 21). The ALJ simply states in his decision that plaintiff's RFC to perform a full range of medium work "is consistent with State agency medical consultant opinions" (AR 21). However, the ALJ gives no citation to these state agency opinions and there appear to be no such opinions in the record. Accordingly, on remand, the Commissioner should re-evaluate the RFC determination that plaintiff could perform a full range of medium work prior to August 21, 2001, and more fully explain the supporting State Agency consultant opinions, so that the court will be in a position to adequately review the ALJ's determinations.

### C. Consideration of additional medical records on remand

Next, plaintiff has presented evidence to the court that was not reviewed by the ALJ: a letter from Dr. Boakye regarding plaintiff's condition prior to the date that the doctor first examined plaintiff (AR 405) and a statement from Dr. Wharton evaluating plaintiff's ability to engage in work related activities from September 25, 1991 through February 24, 1993 (AR 406-10). Plaintiff seeks a remand to allow the ALJ to review these additional medical records that were submitted to the Appeals Council. Plaintiff's Brief at 21.

Plaintiff seeks a remand for further consideration of these records, which were presented to the Appeals Council after the ALJ denied his claim. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).[5] Sentence six provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is <u>material</u> and that there is <u>good cause</u> for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

In the present case, the Appeals Council considered this new evidence presented by plaintiff, but declined his request to review the ALJ's decision (AR 6-10). "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). *See also Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). However, the district court may remand the case for further administrative proceedings in light of this additional evidence, if the claimant shows that the evidence is new and material and that

---

[5] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

there was good cause for not presenting it in the prior proceeding. *Id.* Such a remand is issued under sentence six of 42 U.S.C. § 405(g). *Cline*, 96 F.3d at 148.

Plaintiff has not shown good cause for failing to present this evidence to the ALJ. "Good cause" is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986). Both Dr. Boakye's letter and Dr. Wharton's evaluation were prepared after the ALJ denied plaintiff's claim (AR 405-410). These documents were submitted to the Appeals Council as exhibits to a letter contesting the ALJ's decision (AR 400-04). As previously discussed, both of these documents express opinions with respect to plaintiff's condition as it existed before his last insured date of September 30, 1997. These two documents fail to meet the good cause requirement, because they did not arise in the course of continued medical treatment, but were generated for the purpose of attempting to prove disability. *See Koulizos*, 1986 WL 17488 at *2. In addition, the good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process).

Furthermore, these additional medical records are not material. In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. The Appeals Council found that Dr. Wharton's evaluation, which indicated that plaintiff was unable to

11

concentrate 50% of the time and has been moderately limited in his ability to deal with work stress, was contradicted by the fact that plaintiff was working during the time frame of the evaluation (1991 through 1993) (AR 7).  The Appeals Council also rejected Dr. Boakye's letter, which indicated that plaintiff's condition was of the same severity from 1991 through March 2003 (AR 7).  In rejecting this letter, the Appeals Council noted that Dr. Boakye did not begin to treat plaintiff until August 2000 and that the doctor's retroactive opinion was not supported by contemporaneous medical records (AR 7).  This evidence would not have caused the ALJ to reach a different disposition of the disability claim.

Although the undersigned recommends a sentence four remand on other issues, there is no basis to consider this additional medical evidence on remand.

## IV.  Recommendation

Accordingly, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should re-evaluate plaintiff's disability onset date of August 21, 2001 and his ability to perform medium work prior to that date.

Dated:  June 10, 2005             /s/ Hugh W. Brenneman, Jr.
                                  Hugh W. Brenneman, Jr.
                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).